IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AMANDA K. CLARK, | ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) No. 2:24-cv-00036-JMD |
| MARTIN O'MALLEY, Commissioner of Social Security,[1] | ) ) ) |
| *Defendant.* | ) ) ) ) |

**MEMORANDUM AND ORDER**

Plaintiff Amanda K. Clark requests judicial review of the Commissioner of Social Security's final decision denying her application for supplemental social security income under Title XVI of the Social Security Act.  42 U.S.C. §§ 1383(c)(3), 405(g).  But the Commissioner's determinations as to (1) the opinion of Clark's treating psychiatrist and (2) her residual functional capacity are supported by substantial evidence.  Clark relies heavily on a check-the-box report by a psychiatrist, but that brief report contradicted the findings of a separate psychologist and the evidence at the hearing.  Under Eighth Circuit precedent, federal court review of the Commissioner's decision is very limited and highly deferential.  The Court has no legal basis to upend the Commissioner's decision and thus **AFFIRMS** that decision.

---

[1] The Court substitutes newly confirmed Commissioner of Social Security Frank Bisignano for former Commissioner O'Malley where necessary.  Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security . . . .").

1

## Background

### A. Procedural History

Clark filed an application for supplemental security income in September 2021. ECF 14 at 1. The Social Security Administration denied her claim.[2] ECF 1 at 2. Following a subsequent January 2023 hearing, Administrative Law Judge Janice Barnes-Williams again denied her claim, determining that Clark was not eligible to receive this income. ECF 1 at 2; ECF 1-3 at 15. The agency's appeals board then affirmed the administrative law judge's determination in February 2024. ECF 1 at 2. The administrative law judge's decision is the Commissioner's final decision for purposes of judicial review.[3] *See* 20 C.F.R. § 416.1400(a)(5).

### B. Regulatory Background

To receive benefits under the Act, a potential claimant must prove a disability. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). That is a high standard. A person is disabled "if he is unable to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (emphasis added). The impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in *any* other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B) (emphasis added).

---

[2] Clark also filed for disability insurance benefits under Title II but withdrew her application because her amended alleged onset date post-dated her date last insured. ECF 1-3 at 4.

[3] Because the administrative law judge's decision stands as the Commissioner's final decision, the Court will primarily refer to the Commissioner's—not the administrative law judge's—actions.

To determine whether a claimant is disabled, the Commissioner employs a "five-step sequential evaluation process." 20 C.F.R. § 416.920(a)(1). If the claimant is deemed not disabled during the first two steps, the evaluation ends in a failed claim. For the third step, if the claimant does not have an impairment (or combination of impairments) that matches one listed under the regulations, the analysis proceeds. In turn, if the claimant is determined to be able to work under steps four or five, the request for benefits similarly fails.

Steps one through three examine the claimant's current work activity and impairments. First, the Commissioner considers whether the claimant is "working." *Id.* § 416.920(b), (a)(4)(i). If the claimant is engaged in "substantial gainful activity," the claimant is not disabled. *Id.* Second, the Commissioner determines whether the claimant has a severe "impairment" that "significantly limits [his] physical or mental ability to do basic work activities." *Id.* § 416.920(a)(4)(ii), (c). If no impairment exists, the claimant is not disabled. *Id.* Third, if the claimant has an impairment, the Commissioner considers its medical severity. If the impairment "meets or equals" one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled. *Id.* § 416.920(a)(4)(iii), (d). If not, the analysis proceeds to the next step.

As part of his analysis, the Commissioner must assess the claimant's "residual functional capacity." *Id.* § 416.920(a)(4)(iv), (e). Residual functional capacity represents "the most a claimant can still do despite [his or her] physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (internal citation omitted). It is an "administrative assessment" based on "all relevant evidence," including "medical records, observations of treating physicians and others, and an individual's own description of his limitations."[4] *Boyd*

---

[4] The claimant is responsible for providing evidence related to his residual functional capacity, and the Commissioner is responsible for developing the claimant's "complete

3

*v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (internal citation omitted). "Accordingly, it is the responsibility of the [Commissioner], not a physician, to determine a claimant's [residual functional capacity]."[5] *Id.*

Steps four and five examine the claimant's ability to work. For step four, the Commissioner assesses the claimant's "residual functional capacity and . . . past relevant work." 20 C.F.R. §§ 416.920(a)(4)(iv), (e)–(f). If the claimant has the residual functional capacity to "still do [his] past relevant work," he is not disabled. *Id.* In the final step, the Commissioner considers the claimant's residual functional capacity as well as the person's "age, education, and work experience" to see if the claimant "can make an adjustment to other work."[6] *Id.* § 416.920(a)(4)(v), (g). If the claimant can make an adjustment to "other work" that "exist[s] in significant numbers in the national economy," the Commissioner finds the claimant not disabled. *Id.* § 416.960(c)(1). If not, the claimant is deemed disabled. *Id.* § 416.920(a)(4)(v), (g).

## C. The Commissioner's Final Decision

Because the Commissioner did not supplant the administrative law judge's determination, that determination operates as the Commissioner's final decision. ECF 1 at 2. Applying the five-step sequential evaluation process, the Commissioner deemed Clark "not disabled" and concluded that she did not qualify for the requested supplemental security income. ECF 1-3 at 15. After finding at step one that Clark had "not engaged in substantial

---

medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [his] own medical sources." 20 C.F.R. § 416.945(a)(3).

[5] For this reason, "there is no requirement that [a residual functional capacity] finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

[6] Though the burden of production shifts to the Commissioner at this step, the burden of persuasion to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932 (8th Cir. 2016).

4

gainful activity," the Commissioner determined at step two that she had "the following severe impairments: anxiety disorder, bipolar disorder, attention deficit hyperactivity disorder, post-traumatic stress disorder, social anxiety disorder, and panic disorder with agoraphobia." *Id.* at 7. He held for step three that the claimant did "not have an impairment or combination of impairments" listed in or medically equal to one contained in the regulations. *Id.*

Following step three, the Commissioner found that Clark "has the residual functional capacity to perform a full range of work at all exertional levels" but with certain "nonexertional limitations." *Id.* at 9. Critically, he determined that the claimant could engage in a work environment "free of fast-paced production requirements and involv[ing] only simple, work-related decisions with no more than occasional workplace changes." *Id.* Clark's impairments rendered her unable to face "public interaction," but the Commissioner noted she could "work around coworkers . . . with only occasional interaction." *Id.* He also concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 10.

In the last two steps, the Commissioner decided that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" even though Clark "has no past relevant work." *Id.* at 13–14. He relied on a vocational expert who testified that Clark "would be able to perform the requirements of [at least three] representative occupations." *Id.* at 14. Because he determined that Clark "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the Commissioner deemed Clark "not disabled" under the Act. *Id.* at 14–15. In other words, Clark had not proven that she is "unable to engage in *any* substantial

5

gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 1382c(a)(3)(A) (emphasis added).

## Standard of Review

Article III courts have very narrow authority to review the decision of the Commissioner to grant or deny public benefits. "Congress may allow the Executive Branch to resolve certain matters free from judicial involvement"—perhaps at all. *SEC v. Jarkesy*, 603 U.S. 109, 152 (2024) (Gorsuch, J., concurring). These "matters" include the "grant [or denial] of public benefits." *Id.* at 152–153. In this area, Congress has chosen to give federal courts some (limited) authority to review the decision of the agency, but courts must remain cognizant of this highly limited role.

Congress has given federal courts authority to review only a few things. First, courts can review whether the Commissioner's fact findings are "supported by substantial evidence." 42 U.S.C. § 405(g). If the findings are supported, then the Commissioner's findings "shall be conclusive." *Id.* Second, if the Commissioner rules against a petitioner because that petitioner fails to comply with an agency regulation, "the court shall review only the question of conformity with such regulations and the validity of such regulations." *Id.* Third, courts may (in certain circumstances) "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## Analysis

Clark asserts that the Commissioner's decision was not supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal citations omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* It is

6

simply "more than a mere scintilla"—evidence sufficient that a "reasonable mind might accept as adequate to support a conclusion." *Id*. (internal citations omitted). The Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). Courts "defer heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (internal citation omitted). The Court does not "reweigh the evidence presented to the ALJ." *Reece*, 834 F.3d at 908 (internal citation omitted). The Court will not "reverse merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (internal citation omitted); *see also McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

Under this highly deferential standard, the Commissioner prevails. Clark urges the Court to upend the Commissioner's final decision because Clark believes the administrative law judge (1) incorrectly assessed a psychiatrist's opinion and (2) constructed a residual functional capacity not supported by the record. ECF 13 at 9. But substantial evidence supports the Commissioner's determination on both points. While judicial review is "more than a rubber stamp," *McMillian v. Schweiker*, 697 F.2d 215, 220 (8th Cir. 1983), the Court "must uphold" the Commissioner's decision "if it is supported by substantial evidence on the administrative record as a whole." *Hensley*, 829 F.3d at 931 (internal citation omitted). The Commissioner met this standard, so Clark's claims fail.

### A. The Psychiatrist's Opinion

Clark first argues that the Commissioner was "simply playing doctor" because the Commissioner rejected a psychiatrist's brief report as inconsistent with the record evidence. ECF 13 at 11. That argument fails for several reasons.

7

To begin, the Commissioner is by no means required to defer to the judgment of a single physician. The Constitution and the laws of the United States do not outsource legal decision making to doctors. *See United States v. Skrmetti*, 145 S. Ct. 1816, 1836 (2025); *Brandt ex rel. Brant v. Griffin*, 147 F.4th 867, 887 (8th Cir. 2025) (en banc). That "would reduce judges," including administrative law judges, "to mere spectators" in our legal system. *Skrmetti*, 145 S. Ct. at 1840 (Thomas, J., concurring) (internal citation omitted). Agency regulations highlight that the Commissioner "will not defer . . . to any medical opinion(s) . . ., including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). That does not mean, of course, that a medical professional's opinion is unhelpful or irrelevant—just that the legal fact finder is not bound by it. "The more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s)" and "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim," "the more persuasive the medical opinion(s) . . . will be." *Id.* § 416.920c(c)(1)–(2) (outlining the supportability and consistency factors).

The Commissioner found the psychiatrist's opinion unpersuasive for several reasons, none of which the Court can disrupt. First, the psychiatrist's opinion was "unsupported by objective findings and instead appears based on subjective complaints." ECF 1-3 at 13. The Commissioner added that the opinion "overstates" the evidence as to Clark's alleged impairments while also ignoring "recent records showing achieved stability and increased activity." *Id.* Second, the Commissioner determined that the psychiatrist's statement was inconsistent with the opinions of other medical professionals, including two psychologists. *See, e.g.*, ECF 15 at 1, 8. "[T]he Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (internal citation omitted)). Third, the Commissioner determined that the psychiatrist's brief

8

opinion not only contradicted the evidence from other medical practitioners, but also contradicted other record evidence. The Commissioner found that the rest of the record evidence revealed that Clark (though undoubtedly dealing with serious mental health issues) improves with medication compliance and engages in a "wide range" of ordinary daily activities, including activities for income. ECF 1-3 at 13.

Finally, the psychiatrist's opinion was brief; the psychiatrist submitted only a three-page, "check-the-box," form with just two handwritten sentences discussing the claimant's impairments. ECF 15 at 1, 4; ECF 8-9 at 599–601. Check-the-box opinions are generally insufficient to overcome other medical evidence. The Commissioner is not required to defer to a "bare" and "formulaic" check-the-box opinion that is "highly inconsistent" with the record as a whole. *Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023); *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022) (rejecting a check-the-box opinion as "entitled to relatively little evidentiary value on its face," "conclusory," and "therefore properly discounted"). Where, as here, a treating psychiatrist's opinion "appears on such a [check-the-box] form," the Commissioner "permissibly may rely more heavily on other opinions in the record." *Swarthout*, 35 F.4th at 611.

The Court cannot say that the Commissioner lacked any basis to deem the treating psychiatrist's opinion "unpersuasive" after weighing it against "objective medical evidence" and "evidence from other medical sources" in the record. ECF 1-3 at 13; 20 C.F.R. § 416.920c(c)(1)–(2). Contrary to Clark's argument, the Commissioner did not impermissibly "play[] doctor." ECF 13 at 11. Substantial evidence supports his final decision.

### B. The Residual Functional Capacity Determination

Clark next contends that the assessment of her residual functional capacity is not supported by substantial evidence. ECF 13 at 17. But the Commissioner "considered all the claimant's impairments, including her numerous mental diagnoses." ECF 1-3 at 12. The

9

Commissioner is not required to accept a claimant's allegations as fact. "[L]ike any reasonable factfinder," the Commissioner "is free to credit part of a witness' testimony without necessarily accepting it all." *Cf. Garland v. Dai*, 593 U.S. 357, 366 (2021) (cleaned up). "It does not matter whether the agency accepts all, none, or some of the [claimant's] testimony; its reasonable findings may not be disturbed." *Id.* Just so here. Because the Commissioner discussed Clark's testimony and mental health status, and reached a determination adequately supported by this evidence, the Court will neither reweigh the evidence in the record nor upend his final decision.

In crafting a residual functional capacity for a claimant with mental impairments or other subjective symptoms, the Commissioner examines a claimant's disability by "consider[ing] all [the claimant's] symptoms." 20 C.F.R. § 416.929(a). This analysis includes all statements "about [the claimant's] symptoms" as well as "any description . . . medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and . . . ability to work." *Id.* The Commissioner will then "determine the extent to which [the claimant's] alleged functional limitations . . . due to pain or other symptoms can reasonably be accepted as consistent with the medical signs . . . and other evidence to decide how [his] symptoms affect [his] ability to work." *Id.*

Clark alleges that the evidence "shows [she] does not have the long-term stable mental health the [Commissioner] purports she has." ECF 13 at 20. This assertion oversimplifies the Commissioner's analysis and the record evidence. In a subsection spanning several pages, the Commissioner "cited numerous factors" such as "the effectiveness of medical treatment," Clark's "extensive self-reported activities," and her "work history." ECF 15 at 10–11; *see also* ECF 1-3 at 9–13. Clark's activities include, among other things, "caring for her three children (ages 13, 8, and 4), cooking, cleaning her house, making and selling craft name blocks for income, selling items online for friends, maintaining four or five blogs,

10

attending church, attending her children's sports activities, and driving her daughter to and from school." ECF 15 at 11; *see Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) ("[The claimant's] activities—caring for her young son, preparing his meals, doing housework, shopping for groceries, handling money, watching television, and driving a car when necessary, among other things—showed that she could work."). Reviewing the comprehensive assessment, the Court finds that the Commissioner's conclusions rested within his reasonable "zone of choice." *Ross v. O'Malley*, 92 F.4th 775, 779 (8th Cir. 2024).

Clark's related claim that the Commissioner "ignore[d] the testimony from the [vocational expert]" similarly lacks force. ECF 13 at 20. Clark focuses on the vocational expert's response to a hypothetical question over whether a claimant's reported mental health symptoms could "wax and wane" and, by this oscillation, "result in termination." *Id.* But administrative law judges need not rely on vocational expert testimony regarding a hypothetical question where, as here, the purported limitations on a hypothetical claimant are greater than the actual limitations the Commissioner finds in the record. *See Kraus v. Saul*, 988 F.3d 1019, 1027 (8th Cir. 2021) (finding the vocational expert's "answer was not substantial evidence, as the hypothetical person . . . did not have the same [residual functional capacity] as [the claimant]"). For these reasons, the Commissioner's residual functional capacity findings stand.

## Conclusion

Based on a fully and fairly developed record, and applying the highly deferential standard that Congress has created, the Court finds that the Commissioner (1) sufficiently considered the treating psychiatrist's opinion and (2) made a proper residual functional

11

capacity determination. The Commissioner's final decision is supported by substantial evidence.

**IT IS HEREBY ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**.

Dated this 31st day of October, 2025

_____
JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE